DISHONG *v.* FINKBINER.

*(Circuit Court, W. D. Pennsylvania. April 18, 1891.)*

INJUNCTION—TO RESTRAIN ACTION AT LAW—EJECTMENT.
  A second action of ejectment, involving the same issues of fact as those decided against the plaintiff in the first action, is not vexatious litigation, which will be enjoined by a court of equity, where the statutes of the state where the land lies allow a defeated party in ejectment to bring a second action.

In Equity. On demurrer to bill.
*John C. Shoemaker* and *James R. Macfarlane,* for complainant.
*George M. Reade,* for defendant.

REED, J. The bill alleges that the plaintiff is in possession of a tract of land in Fulton county, Pa., which he holds under a deed of conveyance from George W. Leighty, dated July 7, 1866, title to which land the latter claims under proceedings in partition between himself and his brother and sister, as the heirs at law of John Leighty, who died December 10, 1863, they being the children of John Leighty and Catherine Leighty, alleged by plaintiff to have been the lawful wife of the said John Leighty. Plaintiff has been in possession since July 7, 1866. The bill further alleges that one William Leighty claims that he is the son and only legitimate child of John Leighty, being the son of John Leighty and Lydia Leighty, (or Walters,) who was the lawful wife of John Leighty, their marriage having taken place in 1826, and the said William having been born in 1827. He claims that this marriage antedates the alleged marriage between John Leighty and Catherine Leighty, (his mother being alive, and still the wife of John Leighty at the time,) and therefore he, William Leighty, is the legitimate and only heir of John Leighty, entitled to the said land. That he brought an action of ejectment against the plaintiff in the court of common pleas of Fulton county on August 12, 1876, in which suit a verdict in favor of the present plaintiff was rendered October 6, 1877, and on February 18, 1884,

judgment was entered on the verdict. The bill avers that the sole question at issue in that proceeding was the alleged marriage between John Leighty and Lydia Walters. Subsequently the present defendant, claiming under a deed from William Leighty, began in this court, on February 1, 1883, an action of ejectment against the present plaintiff. This case was put at issue April 3, 1883. On July 9, 1884, an order was made, on the motion of plaintiff, that the plaintiff in ejectment give security for costs, and that in the mean time proceedings in the ejectment suit should be stayed. The security has not been given and the case has remained in that condition until the present time. The bill further avers:

"Your orator is informed and believes that the said conveyance [the deed from William Leighty to Finkbiner] was improperly and collusively made for the sole purpose of conferring jurisdiction upon this court, and that there was no valuable consideration given therefor; that the said William Leighty is still beneficially interested in said claim of title; that the said Isaac Finkbiner has been improperly and collusively made party plaintiff for the purpose of creating a case cognizable in this court, and that he is holding and pressing the same for the benefit of the said William Leighty."

The bill further avers that the claim of the defendant, Finkbiner, and the pending action of ejectment are clouds upon plaintiff's title. That a certain lien against George W. Leighty, arising upon a recognizance given by him in the partition proceedings is being pressed for collection against the said real estate of plaintiff, and by reason of the cloud upon his title plaintiff is unable to use the land as security, and to raise money to pay off this incumbrance. The bill further avers the great age of the witnesses who are cognizant of the facts relative to John Leighty's alleged marriage. It prays that the defendant be enjoined from further proceeding in his said action of ejectment, and from transferring his alleged interest in said real estate, until final disposition of this case, and for general relief. The defendant has filed a general demurrer to the bill, and the question argued was whether the bill has shown such a case as will enable a court of equity to take jurisdiction, and enter a decree for the plaintiff, according to the prayers of the bill.

The general principles which relate to the jurisdiction of courts of equity in cases of this character are well settled. The supreme court in the case of *Holland* v. *Challen*, 110 U. S. 19, 3 Sup. Ct. Rep. 495, say:

"The equity of the plaintiff in such cases arose from the protracted litigation for the possession of the property, which the action of ejectment at common law permitted. That action being founded upon a fictitious demise, between fictitious parties, a recovery in one action constituted no bar to another similar action, or to any number of such actions. A change in the date of the alleged demise was sufficient to support a new action. Thus the party in possession, though successful in every instance, might be harassed and vexed, if not ruined, by a litigation constantly renewed. To put an end to such litigation, and give repose to the successful party, courts of equity interfered and closed the controversy."

In the present case, however, it appears that there has been but one trial at law involving the title to the real estate in question. This trial

resulted in favor of the plaintiff in the bill.   He now seeks to enjoin the trial of the second action of ejectment, brought by the vendee of the former plaintiff, in which second action the same questions of fact will arise which were tried and disposed of in the former suit.   Will equity interfere in such case after but one trial at law?   In the case of *Holland* v. *Challen, supra*, it was held that—

"To entitle the plaintiff to relief in such cases the concurrence of three particulars was essential:   He must have been in possession of the property, he must have been disturbed in its possession by repeated actions at law, and he must have established his right by successive judgments in his favor. Upon these facts appearing, the court would interpose and grant a perpetual injunction to quiet the possession of the plaintiff against any further litigation from the same source.   It was only in this way that adequate relief could be afforded against vexatious litigation and the irreparable mischief which it entailed."

And the court further says that in most of the states the common-law action of ejectment, with its fictions, has been abolished; that the action for the possession of property is not essentially different in form from actions for other property; that the right of possession in such cases may, and generally does, involve a consideration of the actual ownership of the property, and in such cases the judgment is as much a bar to future litigation between the parties as a judgment in other actions is a bar to future litigation upon the subjects determined.   "Where this new form of action is adopted," the court say, "and this rule as to the effect of a judgment therein obtains, there can be no necessity of repeated adjudications at law upon the right of the plaintiff as a preliminary to his invoking the jurisdiction of a court of equity to quiet his possession against an asserted claim to the property."   In *Equator Co.* v. *Hall*, 106 U. S. 87, 1 Sup. Ct. Rep. 128, Justice MILLER said:

"The evil of this want of conclusiveness in the result of this form of action led to the interposition of a court of equity, in which, after repeated verdicts and judgments in favor of the same party, and upon the same title, that court would enjoin the unsuccessful party from further disturbance of the one who had recovered these judgments.   *   *   *   A title to real estate has, under the traditions of the common law, been held, in all the states where that law prevailed, to be too important, we might almost say too sacred, to be concluded forever by the result of one action between the contesting parties.   Hence those states which by abolishing the fictions of the action at the common law, and substituting a direct suit between the parties actually claiming under conflicting titles which, according to the nature of this new proceeding would end in a judgment concluding both parties, have found it necessary to provide for new trials to such extent as each state legislature has thought sound policy to require.   The provisions for new trials in actions of ejectment are not the same in all the states, but it is believed that almost all of them which have abolished the common-law action have made provision for one or more new trials as a matter of right."

In *Miles* v. *Caldwell*, 2 Wall. 40, the supreme court say:

"It was this difficulty of enforcing at law the estoppel of former verdicts and judgments in ejectments that induced courts of equity (which, unrestrained by the technicality, could look past the nominal parties to the real ones) to interfere, after a sufficient number of trials had taken place to determine fairly the

validity of the title, and by injunction, directed to the unsuccessful litigant, compel him to cease from harassing his opponent by useless litigation."

Counsel for plaintiff cited two cases in which there had been but one trial between the parties prior to the filing of the bill in each case. One was the case of *Craft* v. *Lathrop*, 2 Wall. Jr. 103. In that case there had been but one trial at law between the parties, but the question of title had been before the courts three times, in suits by different plaintiffs claiming in different rights, the defendant, however, defending all three suits under one claim of title, and each case was decided favorably to the title of the plaintiff in the bill. Justice GRIER says, referring to the case of *Bath* v. *Sherwin*, Finch, Prec. 261:

"The ground of the decision undoubtedly was that this was the only adequate means of suppressing oppressive litigation and hindering irreparable mischief. This doctrine has ever since been steadily adhered to by courts of equity; and now, wherever a right has been satisfactorily established at law, a court of equity will interfere to prevent further litigation, without inquiring particularly what number of trials in ejectment had taken place. * * * Our inquiry in the present case will be * *' * whether he has shown a case which entitles him to relief from this court, sitting as a court of chancery, with full power to administer equity; or, in other words, has the complainant so satisfactorily established his title at law as to entitle him to invoke the aid of this court to suppress and prevent further litigation of the same question?"

After a consideration of the cases in which the question of title had been decided, the court held that the complainant was entitled to relief because—

"His title has in fact been three times declared valid by the courts of law as against the claim set up by the respondent. The complainant is now harassed with a fourth ejectment on the desperate speculation that possibly the courts of the United States may be persuaded to overrule and reverse the decision of the supreme court of Pennsylvania on a question of title to real property depending on the peculiar laws of that state."

The other case cited by plaintiff's counsel was the case of *Harmer* v. *Gwynne*, 5 McLean, 313. The court there said that it had not been usual to exhibit a bill in chancery for the quieting of a title between two individual claimants until after several verdicts at law; that it does not seem to have been held that any precise number of verdicts at law was necessary before a bill of peace could be sustained, but the better rule would seem to require that the title at law has been fully and fairly established by one or more trials. In that case it appeared that there had been but one trial at law, but exceptions had been taken to the admission of facts in evidence, and the principles of law involved in the case had been twice considered and decided, first in the court below, and afterwards, on appeal, in the supreme court; that there had been long-continued possession, and from lapse of time a presumed acquiescence in the first decision might be drawn, and the court hesitatingly concluded that all these considerations might afford grounds on which to quiet the title. The court really gave relief, however, to the complainant under a statute of the state of Ohio, which gave the right, to proceed to quiet his title to a legal owner in possession, without the prerequisite of a trial at law.

In 2 Story, Eq. Jur. § 859, the rule is stated to be that courts of equity will not interfere in such cases before a trial at law, nor until the right has been satisfactorily established at law. But if the right is satisfactorily established, it is not material what number of trials have taken place, whether two only or more. In 1 Pom. Eq. Jur. p. 265, the rule is thus stated:

"Equity will not interfere on behalf of the plaintiff, and restrain the defendant's proceedings, until the plaintiff's title has been sufficiency established by the decision of at least one action at law in his favor. Indeed, the interference of equity assumes that the plaintiff's legal rights and title have been clearly determined; and its sole object is to quiet that title by preventing the continuance of a litigation at law, which has become vexatious and oppressive, because it is unnecessary and unavailing. A court of equity will not, therefore, interfere to restrain the defendant's litigation so long as the plaintiff's title is uncertain."

In *Railroad Co.* v. *Jersey City*, 9 N. J. Eq. 438, the defendant demurred on the grounds of want of equity, and the court said, speaking of the rule that the right of the complainant must be established at law:

"This is not a technical rule by which the jurisdiction of this court is made to depend upon the number of trials. * * * In some cases one trial would not be considered as conclusive or satisfactory, as when facts are in dispute, depending on the testimony of witnesses, and the trial, necessarily, by jury."

It seems clear, therefore, from the authorities, that any precise number of trials is not necessary, in order to justify the action of a court of equity; that the principle governing is the prevention of useless, vexatious, and harassing litigation, where the plaintiff's rights have been conclusively and satisfactorily settled by a previous trial or trials at law. But in the application of the rule the circumstances of each case must govern. Where the case turns upon questions of law, as in the construction of a will, the trial court has passed upon the questions involved, the appellate court has fully considered and passed upon the same questions, and the plaintiff's title has been settled as a matter of law, evidently a second suit, involving the same disputed questions of law upon the same state of facts, would be useless and vexatious litigation. On the other hand, where there were disputed questions of fact, the law being clear, many witnesses examined, and a verdict of a jury, one such trial might not establish the plaintiff's title in the clear and satisfactory manner required to authorize equity to interfere. A second trial, or even a third trial, might not be useless and vexatious litigation. In this connection; the policy of the law of the state of Pennsylvania in actions of ejectment should be considered. By the act of assembly of April 13, 1807, it is provided that where two verdicts shall in any writ of ejectment between the same parties be given in succession for the plaintiff or defendant, and judgment be rendered thereon, no new ejectment shall be brought; but where there may be verdict against verdict between the same parties, and judgment thereon, a third ejectment in such case, and verdict and judgment thereon, shall be final and conclusive, and bar the right. By the act of May 21, 1881, it is provided that, where there has been one verdict and judgment, or one verdict and judg-

ment against one verdict and judgment, the party in possession may enter a rule upon the adverse party, claiming title, requiring him to commence his second or third action of ejectment within six months thereafter, or show cause why the same cannot be brought; and whenever the party upon whom the rule is served shall not bring his suit within six months after such service, or show cause why he cannot bring such suit, then it shall be the duty of the court to enter judgment, and make the rule absolute against the party so failing, which judgment shall be final and conclusive between the parties, their heirs and assigns, in the same manner as a second or third verdict and judgment between the parties would be, if regularly rendered upon trial. "By the clear intention of this statute, as by its uniform interpretation by the supreme court of Pennsylvania, it requires two concurring verdicts and judgment thereon, in a common-law ejectment, between the same parties, upon the same title, to conclude the right. The words 'the same parties' of course include their heirs or assigns." *Britton* v. *Thornton*, 112 U. S. 535, 5 Sup. Ct. Rep. 291. While the jurisdiction of the United States courts in equity cannot be affected by state legislation, yet undoubtedly, in order to ascertain the extent and nature of the injury complained of by the plaintiff, from which he seeks the protection of a court in equity, it is necessary to know just how far he can be harassed and vexed by litigation, and, when it is found that by the laws of Pennsylvania two verdicts and judgments in his favor will terminate all litigation, a court of equity should require to be shown a very clear and satisfactory title on the part of the plaintiff, and manifestly useless and vexatious litigation on the part of the defendant. Particularly is this so when the policy of the state is to require two concurring verdicts and judgments to settle a disputed title to any portion of the land within its territory, and which, as is said in *Britton* v. *Thornton*, is a rule of property, concerning the title to land within the state, and binding upon the courts of the United States, as well as the courts of the state.

Turning now to the record in this case, a demurrer was filed by the defendant, and the question arises what facts are to be held admitted by the demurrer. A demurrer only admits facts positively alleged, and not conclusions of law, or mere pretenses or suggestions, nor the correctness of the ascription of a purpose to parties not justified by the language used and facts positively alleged. *Dillon* v. *Barnard*, 21 Wall. 430. A demurrer admits the truth of facts well pleaded in the bill; but when the bill shows the source and nature of complainant's title, although containing an allegation that the complainant's title is clear and undisputed, the demurrer admits only the existence of such a title as the facts stated disclose, and the averment that complainant has a clear title will be treated as the statement of a conclusion of law. *Preston* v. *Smith*, 26 Fed. Rep. 884. Facts well pleaded are admitted by a demurrer, but it does not admit matters of inference or argument. *U. S.* v. *Ames*, 99 U. S. 45. Where the bill charges, upon the complainant's information merely, that a certain fact exists, its existence is not admitted by a demurrer. *Williams* v. *Presbyterian Soc.*, 1 Ohio St. 478. Nor does a demurrer ad-

mit facts stated on information and belief.  Fost. Fed. Pr. 114.  Tested by these rules, the demurrer admits the following facts, which are relevant and material in this case:  The possession by the plaintiff of the land, under claim of title through the children of John Leighty and Catherine Leighty, (whom plaintiff claims is the lawful wife of John Leighty;) the trial of the action of ejectment, brought against the plaintiff by William Leighty, claiming to be the legitimate child of John Leighty by his lawful wife, Lydia; the introduction of testimony by plaintiff and defendant in that trial relative to the alleged marriages, which were the questions at issue in the case; the verdict of the jury in favor of the defendant, and judgment on the verdict; the pendency of a second action of ejectment in this court, brought by the present defendant against the present plaintiff, which involves the same questions at issue in the former suit; the stay of proceedings in the second suit, at the application of the present plaintiff, until security should be given for costs, which has not been done; that the claim of the defendant is a grievous burden to plaintiff, casts a cloud on his title, and destroys the value of the property; and that after the first trial William Leighty conveyed his interest in or claim to said real estate to the present defendant.  The demurrer does not admit the allegation in the bill that the plaintiff is informed and believes that this conveyance was improperly and collusively made for the sole purpose of conferring jurisdiction upon this court, and that there was no consideration given therefor, and that William Leighty is still beneficially interested in the property.  Even conceding that these latter allegations are admitted, still they are not relevant in this case, nor will they afford a ground for equitable relief.  They should be made in the ejectment proceeding, and may be inquired into summarily, and, if found to be true, the court has full control of that suit, and ample power to act at any time.  Nor do I think the fact that the defendant has failed to give the security required by the order of the court in the ejectment suit, can give a court of equity jurisdiction to enjoin further proceedings in that case.  There may or may not be some way in which a penalty can be imposed, in the ejectment proceeding, upon the defendant for failure to give security, but the court has no jurisdiction, as a court of equity, to impose the penalty.  The plaintiff's case, therefore, in my judgment, rests upon the facts which I have enumerated as admitted by the demurrer, (excluding the failure to give security.)  These show that the issue in the former trial was a question of fact, no questions of law appearing to have been in dispute; certainly none arose that controlled the decision, and the verdict upon the testimony introduced in that trial was in favor of the defendant in that case.  To sustain the bill I must find that the facts were so clear, and the plaintiff's testimony so overwhelming, that the result of a second trial must necessarily be in his favor.  It is not alleged that the defendant in the bill has no other and additional testimony to offer in the second trial.  Another jury may, even from the same testimony offered in the former trial, come to an entirely different conclusion.  While I recognize the hardship of the case to the plaintiff, still I must give due regard to the rights of the defendant.  The law of Pennsylvania has said that he is entitled to retry the

questions involved, and that he cannot be concluded until after a second verdict and judgment in favor of the plaintiff in the bill. No reason appears why a court of equity should deprive him of that right. The plaintiff's rights and title have not been clearly and satisfactorily established, nor is it shown that the defendant's second suit is useless and vexatious litigation. In my judgment, the demurrer must be sustained. Let a decree be drawn accordingly.