FARMERS' LOAN & TRUST CO. v. LAKE ST. ELEVATED R. CO. et al.*

LAKE STREET ELEVATED R. CO. v. FARMERS' LOAN & TRUST CO.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1903.)

Nos. 887, 890.

1. MORTGAGES—DISCRETIONARY POWER TO FORECLOSE—JOINT TRUSTEES.

Where, by the terms of a trust deed, discretionary power to foreclose, under certain conditions, is vested in two trustees, the concurrence of both is requisite to the exercise of such power, even if not so expressed in terms; and, if the trustees honestly disagree, that fact furnishes no ground for charging either with a breach of the trust, but their nonconcurrence results in a failure on their part to sue, which will authorize the beneficiaries to bring suit for themselves if any one but the trustees jointly may sue in any case.

Appeal and Cross-Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

In 1893 the Lake Street Elevated Railroad Company, an Illinois corporation, executed a trust deed of its railroad in Chicago to the American Trust & Savings Bank, an Illinois corporation, as trustee, and to the Farmers' Loan & Trust Company, a New York corporation, as co-trustee, to secure the payment of bonds. For convenience, the Lake Street Elevated Railroad Company will be called the mortgagor; the Farmers' Loan & Trust Company, the New York trustee; and the American Trust & Savings Bank, the Chicago trustee.

The trust deed provides for the certification by both trustees of the bonds issued and to be issued; authorizes the trustees to appoint a joint agent to attend meetings of the board of directors, and examine the work of the railroad company with reference to the application and expenditure of the proceeds of the bonds; requires that insurance be effected in insurance companies satisfactory to both trustees, the policies to be payable to the trustees and kept by them; provides that, if default in the payment of interest shall continue for six months, the trustees may, if thereunto requested in writing under seal by the holders of one-quarter in interest of the bonds then outstanding, and shall, if thereunto requested in writing under seal by the holders of a majority in interest of the bonds then outstanding, declare the principal of all the bonds then outstanding to be due and payable; provides that if default shall be made in the payment of interest, whether such default shall have continued for six months or not, the trustees may, and upon the request in writing by the holders of a majority in interest of the bonds then outstanding, and upon being indemnified to their satisfaction for expenses and liabilities, shall enter into and take full possession of said railroad, and operate it for the benefit of the bondholders; provides that, if any default

*Rehearing denied April 14, 1903.

in the performance of any of the covenants of the railroad company shall continue for six months, the trustees may, in their discretion, upon being requested in writing by the holders of a majority in interest of the outstanding bonds, and upon being indemnified to their satisfaction against costs and expenses, shall, either after entry as hereinbefore provided, or without such entry, proceed by suit or suits at law or in equity, as the said trustees may be advised, to enforce payment of the bonds and to foreclose this mortgage; directs that nothing contained in the article with reference to declaring the whole debt due shall be construed to preclude the trustees from enforcing an appropriate remedy against the railroad company, or its property and franchise, by foreclosure or otherwise; states that the right of action under this trust deed is vested exclusively in the trustees, and that only in case of refusal on the part of the trustees to perform any duty imposed upon them by this indenture can the bondholders proceed; authorizes the trustees to permit such necessary changes to be made in the line of the railroad as may, in their judgment, be advisable and advantageous to be made; authorizes the trustees, in their discretion, under certain circumstances, to release, for the purposes of sale, any part of the whole property covered by the mortgage; and empowers the trustees to consent to the lease of that part of the railroad in the South Division of the city of Chicago, upon such conditions as they may impose.

The bill in this case was filed January 30, 1896, to foreclose for overdue interest. The New York trustee was complainant. The defendants were the mortgagor, certain lessees, and the Chicago trustee. No relief was asked against the last-named defendant, and the only allegation concerning it was this: "Your orator has requested said American Trust & Savings Bank, named as co-trustee with .your orator in said mortgage, to join with it as complainant in this bill of foreclosure, but said American Trust & Savings Bank has declined and refused so to do, or to take any action in the premises, and your orator has therefore made it a party defendant to this bill of complaint."

An amended bill, filed in 1896, showed that the holders of 610 out of 7,575 outstanding bonds had served a demand in writing upon both trustees to foreclose; that the mortgagor, in 1895, being insolvent and unable to pay interest on the bonds, proposed to the holders that they scale their bonds 25 per cent.; that holders of a majority of the bonds had signed an agreement to do so, and had deposited their bonds with the Northern Trust Company of Chicago. In addition to the allegations respecting the Chicago trustee contained in the original bill, the amended bill charged: "(11) On the maturity of the coupons falling due January 1, 1895, the said American Trust & Savings Bank caused to be issued a circular addressed to the holders of the coupons in the words and figures following:

" 'Chicago, Jan. 1, 1895.

" 'To the Holders of Coupons Hereinafter Referred to:  Please take notice that the coupons of the bonds maturing this day of the Lake Street Elevated Railroad Company are taken up by the undersigned, the American Trust & Savings Bank, trustee, expressly under the following conditions:  The Lake Street Elevated Railroad Company on December 28, 1894, deposited certain moneys with this bank to meet said interest coupons due January 1, 1895. Other parties now insist that those moneys belong to them, and that said moneys should be applied, not toward the payment, but only toward the purchase for them of said coupons. If it be hereafter judicially determined that their position is correct, then the said coupons so maturing January 1, 1895, and taken up by this bank will be turned over to them as purchasers thereof uncanceled; otherwise said coupons will be treated as paid, and will be canceled by this bank. Unless you consent to the conditions of this notice the undersigned must decline to take up said coupons.

" 'The American Trust & Savings Bank, Trustee.

" 'The undersigned, who is the holder and owner of ....................... dollars of the coupons above referred to, hereby accepts and consents to all of the provisions and conditions of the foregoing notice.
.................................................

" 'Witness: ...............................................'

"(12) The amount of money on deposit in said bank to meet said coupons was about $178,000. The holders of about $160,000 of said coupons consented to surrender their coupons on the conditions named in said notice, and received their money therefor. The holders of about $18,000 of said coupons refused to transfer the same on the terms set out in said circular, and were refused payment therefor; and the default in the payment of said coupons not so surrendered under the terms of said circular continued until some time in the month of July, 1895, when certain of said coupons were paid, and the remainder of said coupons not so transferred were paid in October, 1895. On January 27, 1896, your orator was notified by the said Lake Street Company as follows: 'Since December 31, the American Trust & Savings Bank have been authorized and have canceled $29,125.00 of the January 1, 1895, coupons, so that unpaid coupons would be reduced to that extent.' Said bank now, therefore, holds uncanceled said coupons due January 1, 1895, received by it on the conditions of said circular, to the amount of $130,000, and said uncanceled coupons are claimed to be held by said bank, and recognized by said Lake Street Company as unpaid and in default."

"(22) Said American Trust & Savings Bank is aiding said Lake Street Company in its endeavor to force the holders of said first mortgage bonds who have not deposited their bonds with said Northern Trust Company, and come into said reducing or scaling arrangement, to consent to the same, and to deposit their bonds with said Northern Trust Company under said arrangement. Certain of the holders of said first mortgage bonds who presented their coupons due in July, 1895, and in January, 1896, to said American Trust & Savings Bank for payment, were told by the officers and agents of said American Trust & Savings Bank that, unless they consented to said scaling arrangement, the interest on their bonds would not be paid for many years; and said officers and agents urged said bondholders to consent to said scaling arrangement, and to deposit their bonds with said Northern Trust Company."

"(23) The American Trust & Savings Bank still holds in its possession, in trust, $130,000 of the coupons secured by said trust deed, which coupons matured on the 1st day of January, 1895, and claims that, although the original holders thereof have been paid, it still holds said coupons uncanceled and as outstanding obligations for the benefit of the persons who advanced the money to pay the same."

The relief sought was a receivership, a foreclosure, and a sale. Against the Chicago trustee nothing was demanded, except a writ of subpœna. All of the defendants answered. In the verified answer of the Chicago trustee it is alleged: "That this defendant, by its proper officers, carefully and honestly investigated into the situation and condition of said Lake Street Company and its property, and of the rights and best interests of said bondholders and said trustees, and of said Lake Street Company, in the premises, and became convinced that the best interests of each and all concerned, honestly considered, required that no bill ought to be filed, for the present, to foreclose said trust deed, at least, particularly in view of the fact that nearly nine-tenths of all the bondholders secured by said trust deed have requested that no such proceeding should be taken, and also in view of the fact that said complainant in October, 1895, as this defendant was advised, from a communication sent by the solicitors of said complainant, had itself declined to foreclose said trust deed. That a copy of said communication from said solicitors was shown to this defendant some time in October, 1895, and said communication was prompted by the fact that in October, 1895, William Ziegler and certain others had requested said complainant and this defendant to foreclose said mortgage. That it is the opinion and conviction of this defendant that the foreclosure of said trust deed and the appointment of a receiver of said Lake Street Company will be very prejudicial and unfortunate to the interests of said bondholders, as well as of said Lake Street Company. That said Lake Street Company is in what may be called a transitional or development stage. The most valuable part of said road, namely, that from Market or Lake street to Wabash avenue, has been completed within the past year. That said Lake Street Company has not yet had sufficient time within which to attain its growth and increase its earning capacity—a condition which this defendant believes is certain to follow

within a short time. That the precipitation of foreclosure or receivership proceedings at this time, in the opinion of this defendant, while said company is completing its arrangements and connection with the elevated railroad loop which is in process of construction, and whose construction will enable said company to reach the center of said city of Chicago, and connect with and exchange with other elevated roads reaching the greater part of said city, and largely increase the earnings of said Lake Street Company, will be destructive of the interests of said bondholders, and entail upon them very heavy losses, which, in the opinion of this defendant, and as this defendant is advised, in the opinion of nine-tenths of said bondholders, can be obviated by extending said Lake Street Company a reasonable and sufficient time for it to develop and attain its full growth, and which time, in the opinion of this defendant, will cover a period of considerably less than two years. * * *

"That on or about December 28, 1894, said Lake Street Company deposited with this defendant $178,750 to meet said interest coupons due January 1, 1895. And this defendant placed said sum on its books to the credit of the fund for the payment of said coupons. That on or about December 30, 1894, this defendant received notice from said Lake Street Company and others that said moneys did not belong to said Lake Street Company, but the same had been advanced to it, and should be applied, not toward the payment, but only toward the purchase, of said coupons; and this defendant was cautioned by said Lake Street Company and said other parties so giving notice that if said moneys were applied by this defendant toward the payment of said coupons, and the latter canceled, that this defendant would be holden liable in the premises. That thereupon this defendant took advice of its counsel, and by such counsel was in good faith advised that probably the money so received by this defendant as aforesaid constituted a trust fund, and that if it belonged to, and should properly be applied toward the payment of, said coupons, this defendant could not legally use same, except for the purpose of paying and canceling said coupons, but that if, on the contrary, said moneys were never in fact deposited for the purpose of paying said coupons, but merely for the purpose of purchasing or taking a transfer of the same, that then this defendant must use said moneys accordingly. That for the purpose of fully, honestly, and in good faith performing its duty, and protecting the rights and interests of said coupon holders, and all other persons and parties in interest, this defendant, under the advice of its counsel, caused to be prepared and issued the contract referred to in paragraph 11 of said bill, and which contract accurately and truthfully represented the facts as well as the legal situation, as this defendant's counsel then stated and now states to be. And this defendant does not now claim, nor has it at any time claimed, that it holds all or any part of said coupons uncanceled or outstanding and unpaid, or in any way except as above stated. * * *

"This defendant denies each and every of the allegations in the twenty-second paragraph of said amended bill, and further avers that the statement contained in said paragraph 22 of the said amended bill of complaint, that this defendant 'is aiding said Lake Street Elevated Railroad Company in its endeavor to force the holders of said mortgage bonds who have not deposited their bonds with said Northern Trust Company, and come into said reducing or scaling arrangement, to consent to the same, and to deposit their bonds with said Northern Trust Company, under said arrangement,' is unequivocally untrue in every particular, and is without the slightest foundation in fact. That the further statement contained in said paragraph 22 that 'certain of the holders of said first mortgage bonds, who presented their coupons due in July, 1895, and in January, 1896, to said American Trust & Savings Bank for payment, were told by the officers and agents of said American Trust & Savings Bank that, unless they consented to said scaling arrangement, the interest on their bonds would not be paid for many years, and said officers and agents urged said bondholders to consent to said scaling arrangement, and to deposit their bonds with said Northern Trust Company,' is unequivocally untrue in every particular, and is without the slightest foundation in fact. That neither this defendant, nor any of its officers or agents, have at any time endeavored to force, persuade, or encourage the holders of said first

mortgage bonds, or any of them, to consent or acquiesce in said reducing or scaling arrangement, or to deposit their bonds with said Northern Trust Company under said arrangement, or under any arrangement whatever. That neither this defendant, nor any of its officers or agents, have ever told any of said bondholders, directly or indirectly, that unless such bondholders consented to said scaling arrangement the interest on their bonds would not be paid for many years, nor for any other period of longer or shorter duration. That neither this defendant, nor any of its officers or agents, have at any time either urged, advised, or encouraged any of said bondholders to consent to said scaling arrangement, and to deposit any of said bonds with said Northern Trust Company.

"This defendant denies the allegation in paragraph 23 of said amended bill that this defendant holds in its possession, in trust, $130,000 of the coupons secured by said trust deed, and which matured on January 1, 1895, and avers that this defendant, as a matter of fact, does hold but $1,325.75 of said coupons, as hereinbefore more fully explained. That this defendant does not claim, nor has it at any time claimed, that it holds all or any part of said coupons 'canceled and as outstanding obligations for the benefit of the persons who had advanced the money to pay the same.' That in truth and in fact, as said complainant well knows, this defendant does not claim, and never has claimed, that it holds or held any of said coupons for the benefit of the persons who deposited the money to pay the same. That, on the contrary, said complainant, long before the filing of the original bill herein, was informed and advised by this defendant, by written communication to itself, and by oral communication to William Burry, its agent, that this defendant had refused and objected to hold said coupons, or any of them, for the benefit of the persons who had deposited the money to pay the same."

The complainant filed replication, but no evidence was ever taken, nor hearing had, nor decree entered, respecting receivership or foreclosure. While the application for the appointment of a receiver and other motions were pending, the trial court expressed views that the suit by complainant was maintainable.

In January, 1901, the bondholders who had not joined in the scaling plan sold and transferred their bonds to the mortgagor, which put these bonds into the scaling arrangement. Thereupon the defendants' motion to dismiss the cause was overruled, the court "reserving jurisdiction of the parties and subject-matter for the purpose of allowance to complainant's solicitors of solicitors' fees." At the same time it was ordered "that this cause be referred to Henry W. Bishop, one of the masters in chancery of this court, to take evidence and report the reasonable and proper charges and expenses to be allowed complainant and its solicitors in this proceeding." The master heard evidence, and reported that certain allowances should be made. Complainant filed objection that the master's allowance was too low. The mortgagor filed objections, presenting the questions hereinafter stated in its assignment of errors. The court overruled complainant's objection, and overruled all of the mortgagor's objections, except as to the amount, and a decree for a slightly reduced sum was entered. Both parties have appealed. Under its assignment of errors, the New York trustee asks increased allowances. The mortgagor, by its assignment, presents these propositions, among others:

(1) That the New York trustee, under the terms of the trust deed and under the facts disclosed by the record, was not entitled to bring and maintain this suit.

(2) That the court should have dismissed the suit for want of jurisdiction.

Chas. H. Aldrich, for Lake Street Elevated R. Co.

J. K. Boyesen, for Farmers' Loan & Trust Co.

Before JENKINS and BAKER, Circuit Judges, and SEAMAN, District Judge.

BAKER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The New York trustee objects to this court's considering the mortgagor's propositions above stated, because the mortgagor did not take an earlier appeal from the Circuit Court's adverse opinion, because the questions were virtually determined in Farmers' Loan & Trust Co. v. Lake Street Elevated Railroad Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667, and because the Supreme Court (178 U. S. 614, 20 Sup. Ct. 1030, 44 L. Ed. 1216), while this cause was pending in the Circuit Court, denied the mortgagor's petition for a writ of certiorari.

The Circuit Court's opinions, which we find in the record, except that rendered in connection with the decree from which these appeals are taken, were stated with respect to proposed action on receivership and foreclosure which was never had. The only appealable order or decree in the cause is the one which is now attacked by both parties. Into the decree for fees and expenses certainly enter the questions of jurisdiction and of the right of the New York trustee to appear as complainant in foreclosing the trust deed. If the New York trustee was acting outside of its delegated powers, as lawfully determined by the settlor, most assuredly it could not recover against the settlor fees and expenses for doing so.

The case in 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667, came to the Supreme Court on writ of error to the Supreme Court of Illinois. Within an hour after the present foreclosure suit was started in the Circuit Court, the mortgagor filed a bill in the superior court of Cook county, Ill., against the New York trustee, to restrain it from acting as a trust company in Illinois, and from foreclosing this trust deed. The mortgagor was successful in the state courts. The Supreme Court held that the fact that an earlier suit was pending in the federal court, in which the rights of the New York trustee under the Illinois statutes and under the trust deed were involved, precluded the state courts from taking jurisdiction to pass upon those questions. But, as we understand the case, the Supreme Court did not decide that the New York trustee's suit was maintainable in the federal court. The federal court, by the filing of the bill to foreclose, acquired jurisdiction in the broad sense to pass upon the rights of the complainant and to determine the question of its own jurisdiction in the narrow sense; that is, whether the requisite diversity of citizenship existed.

In denying the petition for a writ of certiorari in 178 U. S. 614, 20 Sup. Ct. 1030, 44 L. Ed. 1216, the Supreme Court delivered no opinion. It would seem that one very good reason for refusing the writ would be this: The foreclosure suit was pending in the Circuit Court, unheard and undetermined. No receiver had been appointed. No foreclosure or other final decree had been entered. It could not be known that errors, if any had been committed, would not be corrected in the Circuit Court, and cured by a final decree thereafter to be entered.

We conclude that the questions are open.

1. In taking up the first of the mortgagor's propositions, we deem it necessary to consider (a) the terms of the trust deed, and (b) the facts established by the record respecting the attitude of the trustees.

(a) The deed was made to the trustees equally. From the provisions referred to in the statement, it is manifest that the trustees, under some circumstances, had obligatory duties to perform, and, under others, large discretionary powers to exercise, with respect to the interests both of the bondholders, as a whole, and of the mortgagor. The circumstances necessary to make it the duty of the trustees to declare the debt due, and to foreclose therefor, did not exist. The trustees were under no obligations to comply with the demand of the holders of one-tenth of the bonds to foreclose for overdue interest, or with the demand of the holders of nine-tenths of the bonds not to foreclose. Under these circumstances, the trustees had the discretionary power to foreclose for overdue interest, or not, as they honestly believed to be for the best interests of all concerned. Such was the interpretation given to the trust deed by this court, and correctly, we think, in Lake Street Elevated Railroad Co. v. Ziegler, 39 C. C. A. 431, 99 Fed. 114, bottom page 120.

(b) The New York trustee was of the opinion that the discretionary power of the trustees should be exercised in the way demanded by the holders of one-tenth of the bonds, and there is nothing in the record from which we can find that its opinion was not an honest one. Thereupon the New York trustee filed its bill to foreclose for overdue interest. No charge was made in the original bill that the Chicago trustee had renounced or abandoned the trust, or that it had acquired interests in the trust estate which incapacitated it to form and hold an honest judgment with respect to the exercise of the discretionary power. If the averments of the amended bill could rightly be construed to charge (which we doubt) that the Chicago trustee had renounced or abandoned the trust, or that its action was anything more than an expression of its honest opinion how the discretionary power of the trustees should be exercised, the charges are explicitly denied in the verified answer, and there is no proof to sustain them. The circular notice sent by the Chicago trustee to the bondholders, which is found in the amended bill and in the proofs, shows that the mortgagor had deposited with the Chicago trustee money which the Chicago trustee at first thought was applicable to the payment of interest coupons; but other parties notified the Chicago trustee that they had furnished the money to the mortgagor under an agreement that the money should be used, not in payment, but in purchase, of coupons. When notified of this claim, the Chicago trustee acted under the circumstances as any prudent stakeholder would. There is nothing in the record from which we can find that the Chicago trustee's opinion, any more than the New York trustee's, was not an honest one. And if each was only engaged in forming and holding and acting on its real judgment with respect to the exercise of the discretionary powers lodged in the trustees, then each, far from renouncing or abandoning the trust, was acting under it.

Now, considering that under the trust deed the foreclosure for overdue interest was a matter within the discretionary power of the trustees, and considering that the trustees honestly differed with regard to the manner in which that discretionary power should be

exercised, what is the law? The mortgagor had the right to create a trust in which the discretionary power to foreclose or not foreclose for overdue interest, in the absence of a demand by the holders of a majority of the bonds, should be lodged in a trustee or trustees. The mortgagor had the right to create a trusteeship as an indivisible unit, whether that trusteeship was to be held by one trustee or by two or more trustees. The mortgagor had the right to require that no act, the performance or nonperformance of which was committed to the judgment and discretion of the trustees, should be undertaken by one trustee without the concurrence of the other. Perry on Trusts, § 411; Lewin on Trusts, p. 258; Delegation of Discretionary Powers by a Trustee, 12 Cent. Law J. 266, 290; Wilbur v. Almy, 12 How. 180, 191, 13 L. Ed. 944; McGeorge v. Bigstone Gap Co. (C. C.) 88 Fed. 599; Golder v. Bressler, 105 Ill. 419; Pennsylvania Co. v. Bauerle, 143 Ill. 459, 33 N. E. 166; Patterson v. Leavitt, 4 Conn. 50, 10 Am. Dec. 98; Shaw v. R. Co., 5 Gray, 162; Vandever's Appeal, 8 Watts & S. 405, 42 Am. Dec. 305; Berger v. Duff, 4 Johns. Ch. 368; Green v. Miller, 6 Johns. 39, 5 Am. Dec. 184; Sinclair v. Jackson, 8 Cow. 543, 583; Wilder v. Ranney, 95 N. Y. 7. And in a private contract, if the settlor grants discretionary powers and names two or more trustees, the presumption of law is that the settlor intended to require the concurrence of all, even if he has not said so in terms. Sloo v. Law, 22 Fed. Cas. 354 (No. 12,957), and authorities supra. And if the trustees honestly disagree, that fact furnishes no ground to either for charging the other with a breach of the trust. Quackenboss v. Southwick, 41 N. Y. 117, 122.

This leads to the conclusion that the decree is not sustainable. But the New York trustee contends that "where one trustee refuses to bring suit, and one is willing to sue, a bondholder cannot maintain the suit, as he must allege the refusal of the trustees," and cites "Robinson v. Railroad Co., 46 Fed. 12." We do not find the case cited, but assume that reference was intended to Robinson v. Alabama & Georgia Mfg. Co. (C. C.) 48 Fed. 12. There a suit by one trustee against the mortgagor and the other trustee was sustained on the facts that the defendant trustee had acquired an interest in the trust property inimical to the trust, and that it was doubtful whether the defendant trustee had ever been properly appointed. But neither that case, nor any other we have examined, supports the proposition that, if a joint discretion is lodged in two trustees, and if the beneficiary may sue upon the failure of the trustees to sue, the beneficiary may not sue in case one trustee is willing to sue, and the other is unwilling. On the basis that the trusteeship is a unit, no action can be taken in a discretionary matter without the concurrence of the two trustees; and nonconcurrence with respect to the bringing of a discretionary suit is a failure of the trustees to sue, which warrants the beneficiaries in suing for themselves, if any one but the trustees jointly may sue.

2. If one trustee, in a joint trusteeship, by disagreeing with his co-trustee in a matter of discretion, may sue the settlor by making his co-trustee a party defendant (which we deny), we are of opinion that on the facts of the case the Circuit Court had no jurisdiction.

Neither trustee had renounced or abandoned the trust. If the complainant trustee could require the court to substitute its discretion for that of the defendant trustee, nevertheless the parties should be arranged according to interest. The sole object of the suit was to obtain a receivership and foreclosure. With respect to that relief, the defendant trustee, its discretion being overborne by the court, had the same rights and interests as the complainant trustee. They held the legal title jointly. The debt was a unit. Ayres v. Wiswall, 112 U. S. 187, 191, 5 Sup. Ct. 90, 28 L. Ed. 693. They were both indispensable parties. Counting their interests as identical, the requisite diversity of citizenship does not exist. Shipp v. Williams, 22 U. S. App. 380, 10 C. C. A. 247, 62 Fed. 4, and cases therein cited.

But without pursuing this topic further, and without expressing any views upon other questions presented, we are content to rest our conclusion on the first proposition.

The appeal of the New York trustee is denied. On the cross-appeal of the mortgagor, the decree is reversed, with the direction to dismiss the cause for want of equity.